COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Senior Judge Fitzpatrick
Argued at Salem, Virginia


SAM MOORE FURNITURE INDUSTRIES AND
   CHARTER OAK FIRE INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0685-07-3                      JUDGE LARRY G. ELDER
                                                       FEBRUARY 26, 2008
JERRY ALLEN SMITH


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Anne C. Byrne (Warren H. Britt; Warren H. Britt, P.C., on brief), for
              appellants.

              P. Heith Reynolds (Wolfe, Williams & Rutherford, on brief), for
              appellee.


        Sam Moore Furniture Industries and the Charter Oak Fire Insurance Company (hereinafter

collectively "employer") appeal from a decision of the Workers' Compensation Commission

awarding benefits to Jerry Allen Smith for a shoulder injury. On appeal, employer contends the

commission erroneously concluded Smith's shoulder claim was not barred by the statute of

limitations in Code § 65.2-601 and, alternatively, that even if Smith's shoulder injury was properly

held to be compensable, he was not entitled to temporary total disability benefits for the disputed

period. We hold credible evidence in the record supported the commission's decision that the

statute of limitations did not bar Smith's shoulder claim. We hold further that credible evidence

supported the finding that claimant's temporary total disability status was ongoing. Thus, we affirm

the commission's award of benefits.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

On appeal, we defer to the commission in its role as fact finder. VFP, Inc. v. Shepherd, 39 Va. App. 289, 292, 572 S.E.2d 510, 511 (2002). The factual findings of the commission are binding on appeal if supported by credible evidence. Tomes v. James City County Fire Dep't, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002). The commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983).

A.

STATUTE OF LIMITATIONS

Code § 65.2-601 requires that, in order for an injured employee to avail himself of the benefits of the Workers' Compensation Act, he must file a claim with the commission within two years of the accident. Absent a recognized exception to the statute of limitations, see, e.g., Tuck v. Goodyear Tire & Rubber Co., 47 Va. App. 276, 284-85, 623 S.E.2d 433, 437 (2005) (discussing tolling, estoppel, and doctrine of imposition), the timely filing of a claim is jurisdictional, Barksdale v. H.O. Engen, Inc., 218 Va. 496, 497, 237 S.E.2d 794, 795 (1977). Whether a claim is barred by the statute of limitations is ultimately a question of law. Tuck, 47 Va. App. at 285, 623 S.E.2d at 437. However, as we recently reiterated, "[w]hether the information filed with the commission is sufficient to constitute a timely filed claim for a particular injury is a question of fact, and the commission's finding will not be disturbed on appeal if supported by credible evidence." Corporate Resource Mgmt. Inc. v. Southers, 51 Va. App. 118, 127, 655 S.E.2d 34, 38 (2008) (en banc).

"Statutes of limitations 'are designed to suppress fraudulent and stale claims from being asserted after a great lapse of time, to the surprise of the parties, when the evidence may have been lost, the facts may have become obscure because of defective memory, or the witnesses have died or

disappeared.'" Id. (quoting Street v. Consumers Mining Corp., 185 Va. 561, 575, 39 S.E.2d 271, 277 (1946)). Specifically in the context of workers' compensation, the Supreme Court has noted several

> "compelling" reasons for requiring a claimant to file a timely claim for all injuries sustained in a particular accident—the need of the employer to "determin[e] whether or not there was in fact an injury, the nature and extent thereof, and if related to the accident" [and] . . . to obtain "the treatment necessary to effect a cure of the claimant and to minimize the employer's liability."

Id. at 128, 655 S.E.2d at 39 (quoting Shawley v. Shea-Ball Constr. Co., 216 Va. 442, 446-47, 219 S.E.2d 849, 853 (1975)).

The Supreme Court applied these principles in Shawley, in which it upheld the commission's finding that a timely claim for injuries to an employee's left ankle and right hip did not preserve a claim for injuries to his back and right ankle. 216 Va. at 446-47, 219 S.E.2d at 853. In Shawley, no timely claim was filed for injuries to the back and right ankle, and in addition, the medical records gave no indication of any injuries to the back and right ankle until after the statute of limitations had passed. Id. at 443-47, 219 S.E.2d at 851-53. Under those circumstances, the Court held, credible evidence supported the commission's application of the statute of limitations to bar the claim. Id. at 444, 219 S.E.2d at 851.

We recently applied these principles in Southers, 51 Va. App. at 121, 655 S.E.2d at 35, in which we upheld the commission's finding that a timely claim for a shoulder injury[1] preserved a claim for a neck injury on the facts of that case. In Southers, unlike in Shawley, the medical records documented chronic problems with both the shoulder and the neck following the accident. Id. at 121-25, 129, 655 S.E.2d at 35-37, 39. Treating medical personnel originally purported to rule out

---

[1] Southers did not file a formal claim, but she endorsed an agreement to pay benefits, prepared by her employer's carrier, which served as the basis for the commission's award. Southers, 51 Va. App. at 121, 132, 655 S.E.2d at 35, 41.

any problem with the neck, and Southers learned only after obtaining a new treating physician that her chronic shoulder problems resulted from an injury in her neck that caused more pain in her shoulder than in her neck. Id. at 123-24, 131, 655 S.E.2d at 36-37, 40. Due in large part to an extended break in claimant's medical treatment resulting from a coverage dispute between employer and its carrier, the neck injury diagnosis was made only after the statute of limitations had expired. Id. at 123, 131, 655 S.E.2d at 36, 40. On those facts, we held that Southers's timely filing of a claim for an injury to her shoulder was sufficient to satisfy the statute of limitations for a neck injury, as well, because

> claimant's timely claim for a left shoulder injury and her consistent complaints to her medical providers of pain in her left shoulder radiating into her neck gave [the employer] all the notice it needed to meet the objectives Shawley termed "compelling" reasons requiring the timely filing of a claim for all injured body parts. [The employer] had timely notice of claimant's assertion that she suffered a significant blow to her left shoulder area, and claimant received timely medical attention for the affected, interrelated body parts and symptoms.

Id. at 130-31, 655 S.E.2d at 40.

In Smith's case, the body part for which Smith sought coverage after expiration of the statute of limitations was his shoulder, whereas employer had previously accepted as compensable only an injury to Smith's elbow. In Smith's case, however, in marked contrast to Shawley and Southers, Smith had filed two timely claims for benefits that listed his injury as being not only to his "right elbow" but also to his "[r]ight arm." Although the stipulations that Smith and employer entered into and the awards the commission approved specifically covered only the right elbow, the body part reported to have sustained a direct blow in the accident, the commission unanimously recognized the timeliness of Smith's filing of claims for injuries to both his right elbow and his right arm.

- 4 -

The only articulated dispute among the commissioners was whether Smith's timely filing of a claim for injury to his right arm was sufficient to constitute timely filing of a claim for injury to his right shoulder. In light of the medical evidence and our reasoning in Southers, we hold credible evidence in the record supports the commission's finding that it was.[2] When Smith's treating physician, Dr. Drew Kiernan, was asked on deposition why he opined a causal relationship existed between Smith's original elbow injury and subsequent shoulder problems, he testified as follows:

> [I]t's very common to have multiple levels of injury *in the same limb* when some forceful thing occurs. Obviously not just one tiny piece of the limb, whether it's one bone or one tendon, is loaded excessively when some physical event happens, whether it's a fall from a ladder or a slipped wrench or getting hit by a car. There[ ] . . . are multiple things that are stressed. So in reviewing things with [Mr. Smith], particularly in more recent visits, it seemed . . . that all these symptoms, whether it was related to the shoulder or the elbow, began near the same time and seemed to be temporally related to what he described happening at work. . . . [I]t seemed that the problems in general *with the right upper extremity* began at or about the same time. So I believe that the event that happened then was responsible not only for his elbow pain, but his shoulder pain.
>
> . . . [A]lso . . . , as you know from the records, his elbow pain has remained a problem despite my previous treatment. It is known that shoulder pain can radiate further down the limb toward the elbow or even beyond the elbow in terms of what a patient perceives.

---

[2] On brief, employer contends the commission held that, once employer "responded to 20-Day Orders on February 13, 2004[,] that it would accept Smith's right shoulder condition," it was "estopped from defending the claim" and that the commission refused to consider its subsequent "20-day order [filed] on September 8, 2004[,] denying the claim for benefits as being unrelated to the original accident." We believe employer misconstrues the commission's opinion. We interpret the commission's opinion as referring to the fact that employer did not assert a statute of limitations defense and originally accepted the shoulder disability as a compensable consequence of the elbow injury, paying at least one day of temporary disability benefits. When Smith filed a later claim seeking ongoing temporary total disability and medical benefits for surgery on his shoulder, employer challenged the causal relationship of the shoulder condition to the industrial accident but still did not assert a statute of limitations defense. The commission noted that the deputy commissioner, in his opinion of March 1, 2005, was the first to raise the statute of limitations issue. Finally, the commission considered the statute of limitations issue on the merits, holding Smith timely filed a claim for the arm including the shoulder. The commission then remanded to the deputy for consideration of employer's other defenses, including its claim that the shoulder injury was "not related to the June 1, 1999, compensable injury." Thus, the commission clearly did not hold employer was estopped from defending the claim.

> So it's possible actually that his problem in the shoulder all of this time to some degree has explained his elbow pain. And that would explain further why he didn't respond very well to my treatment of his elbow.
>
> \*    \*    \*    \*    \*    \*    \*
>
> . . . [W]hen pieces of the puzzle start coming together and you have a little bit more information, particularly about how people respond to treatment, one may change their opinion about how things are related.

(Emphases added). Thus, Dr. Kiernan opined not only that the injuries to the elbow and shoulder were sustained at the same time but also that the elbow and shoulder were *part of the same limb*, the "right upper extremity" or arm, a body part for which Smith had filed a timely claim. Further, Dr. Kiernan opined that the injury to the shoulder could have been a contributing cause of Smith's elbow pain from the beginning and could explain why Smith's elbow problems persisted despite significant treatment targeting the elbow. See Southers, 51 Va. App. at 123-24, 655 S.E.2d at 36-37 (involving delayed but definitive medical opinion that pain in shoulder, body part for which timely claim was filed, in fact resulted from injury to neck, body part for which claim was not timely filed).

Finally, here, as in Southers, Shawley's "compelling" reasons entitling an employer to timely notice of an injury to a particular body part have been met: Although neither Smith nor employer was aware of a specific injury to Smith's shoulder during the statutory period,[3] "[employer] had timely notice of [Smith's] assertion that [he] suffered a significant blow to [his right elbow and arm,]" of which the record supports a finding that the shoulder was a part, and Smith "received timely medical attention for the affected, interrelated body parts and symptoms" as they manifested themselves. Id. at 130-31, 655 S.E.2d at 40. Given Smith's timely filing of a claim for an arm injury, which encompassed the shoulder, Smith should not be penalized for the fact that

---

[3] The first mention of a right shoulder problem appears in an office note of Smith's treating physician for an examination conducted two years and approximately two weeks after Smith's industrial accident.

- 6 -

his compensable injury did not manifest itself as shoulder pain until a few weeks after the statute of limitations had expired. The fact that employer did not learn at an earlier time that Smith's shoulder was injured in his compensable accident of June 1, 1999, was not the fault of Smith, who was also unaware of the injury. The record supports the commission's finding that employer did not "experience any 'surprise' by the present claim" and the commission's rejection of the idea that "claimant sat on his rights with respect to the present claim" where he filed "several timely claims for an arm injury, followed by lengthy compensable treatment." Employer also was fully permitted to contest causation when claimant sought benefits specifically for his shoulder. Id. at 131, 655 S.E.2d at 40. Thus, here, as in Southers, "[a]pplying the statute of limitations on these facts . . . would provide a windfall to [employer] and impose upon claimant a forfeiture not required by either the statute or controlling case law interpreting it." Id. at 133, 655 S.E.2d at 41.

B.

ENTITLEMENT TO ONGOING TEMPORARY TOTAL DISABILITY BENEFITS

Employer contends that, if the shoulder claim is compensable, claimant failed to establish ongoing total disability after March 14, 2005, causally related to his shoulder because he failed at the subsequent hearing on April 20, 2006, to submit medical evidence showing ongoing total disability. We hold credible evidence supports the commission's finding that claimant's disability was ongoing at the time of the April 20, 2006 hearing. The commission found ongoing total disability from August 9, 2004, and continuing. Although employer disputes only claimant's entitlement to compensation from March 14, 2005, and continuing, we examine the evidence relating to the period beginning August 9, 2004, because the evidence for these periods is interrelated.

The commission's determination regarding the nature and extent of disability is a question of fact and is binding on appeal if supported by credible evidence. See, e.g., Ga. Pac. Corp. v.

- 7 -

Dancy, 17 Va. App. 128, 133-34, 435 S.E.2d 898, 901 (1993). Determinations of ongoing disability, like questions of medical causation, need not be based solely on medical evidence. See Dollar Gen'l Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996) (applying principle in context of determining causation). Ongoing disability, like causation, may be proved by either direct or circumstantial evidence, including medical evidence or "the testimony of a claimant," if found credible by the commission. Id.

Dr. Kiernan began treating claimant in 2000 for his 1999 injury by accident. That treatment included claimant's right elbow, for which he had surgery in 2000 and 2002, and, subsequently, his right shoulder. On August 9, 2004, when claimant saw Dr. Kiernan for reevaluation of his right shoulder, Dr. Kiernan opined claimant had a torn rotator cuff, reiterated his previous opinion that claimant should undergo surgery on his right shoulder, and stated, "No work at this point." When claimant saw Dr. Kiernan on March 14, 2005, Dr. Kiernan observed the appointment was for evaluation of claimant's right elbow, but he examined claimant's right shoulder, as well. Dr. Kiernan noted claimant reported "considerable disability remains due to right shoulder pain with increasing pain and considerable weakness" and that claimant "has been unable to participate in any gainful employment due to these symptoms." Dr. Kiernan also indicated claimant had undergone "[n]o interval change in his medical status." Dr. Kiernan recorded ongoing elbow tenderness, as well, but said this was secondary to claimant's shoulder pain. Finally, Dr. Kiernan opined that claimant "may return to regular work as it relates to the right elbow, though this will not be possible due to his severe right shoulder pain and limited function."

Employer concedes this evidence establishes disability through March 14, 2005, but contends the evidence in the record fails to support a finding of disability after that date. We disagree. At the hearing before the deputy commissioner on April 20, 2006, claimant testified that when he last saw Dr. Kiernan in March 2005, Dr. Kiernan told him he could not return to work until

after he underwent shoulder surgery and that "there wasn't [any] use in [claimant's] coming back [to see Dr. Kiernan] until" he was able to have the surgery because there was "[n]othing [Dr. Kiernan] could do." Claimant testified he had been unable to have the recommended surgery because "compensation wouldn't let me," that compensation would not approve any additional visits to Dr. Kiernan, and that "[compensation] hadn't paid for the ones they owe [Dr. Kiernan] for now." Claimant testified on April 20, 2006, that he was unable to do "even light duty work," that Dr. Kiernan "told [claimant] he didn't want me doing [anything]," and that no one had "ever released [him] back to work."

The medical evidence and "claimant's uncontradicted testimony," including his statement "that he was never released to work capacity," which the commission found credible, supported the commission's finding that "there was no change in the claimant's condition and [that] his treatment remained at a status quo" until he could "undergo the surgery recommended by Dr. Kiernan," which had been "delayed due to the pendency of the present litigation." Thus, we affirm the commission's decision that claimant was entitled to temporary total disability benefits from March 15, 2005, and continuing.

## II.

For these reasons, we hold credible evidence in the record supported the commission's decision that the statute of limitations did not bar Smith's shoulder claim. We hold further that credible evidence supported the finding that claimant's temporary total disability status after March 15, 2005 was ongoing. Thus, we affirm the commission's award of benefits.

<u>Affirmed.</u>

McClanahan, J., dissenting.

I see no appreciable distinction between this case and Shawley v. Shea-Ball Construction Co., 216 Va. 442, 219 S.E.2d 849 (1975). Our decision in Corporate Resource Management Inc. v. Southers, 51 Va. App. 118, 655 S.E.2d 34 (2008) (en banc), does not control this case. In Southers, the commission found that it was "*not a case involving injuries to two separate body parts but the same injury*." Id. at 125, 655 S.E.2d at 37 (emphasis in original). But here, the commission found two injuries to separate body parts, stating it is "evident that the claimant injured his elbow in the original accident" and that later claims were filed for an arm injury, which the commission interpreted as including the shoulder injury.

Extending the holding in Southers to Smith completely undercuts the rationale given by the en banc majority for the exception to Shawley created by Southers. As we noted in Southers, the Supreme Court of Virginia in Shawley "found relevant *both* the failure to file a formal claim listing injuries to the back and right ankle prior to expiration of the statute of limitations *and* the absence of any mention of injury to those body parts in the medical records prior to expiration of the statute of limitations." Id. at 129, 655 S.E.2d at 39 (emphasis in original). In Southers, unlike in Shawley, the medical records documented chronic problems with both the shoulder and the neck following the accident. Id. at 129-30, 655 S.E.2d at 39-40. In contrast here, Smith failed to file a formal claim for injuries to his shoulder, a separate injury, *and* there is an absence of any mention of injury to or pain from the shoulder prior to the expiration of the statute of limitations.

I, therefore, respectfully dissent.